UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DUANE HOWES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23 CV 472 JMB |
| | ) |
| CHARTER COMMUNICATIONS, INC. and | ) |
| SEDGWICK CLAIMS MANAGEMENT | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the cross Motions for Summary Judgment filed by Plaintiff Duane Howes (Doc. 48) and Defendants Charter Communications, Inc. and Sedgwick Claims Management Services, Inc. (Doc. 50). For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendants' Motion is **GRANTED**.

**I.   Introduction**

Plaintiff was employed by Charter Communications, Inc. as a Senior Account Executive until June 11, 2021 (Doc. 61 ¶ 6). As an employee, he was a participant in Charter's Welfare Benefit Plan (the "Plan") which is governed by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*. (Id.) A component of the Plan is a Short Term Disability (STD) program which provides up to 26 weeks of benefits to eligible employees (Id. ¶ 2). Charter delegated administration of the STD Program to Sedgwick Claims Management Services, Inc. which is the "Claims Administrator" (Id. ¶ 3). Plaintiff sought STD benefits on June 16, 2021 (Id. ¶21). Sedgwick denied Plaintiff's request on August 20, 2021 (Id. ¶ 22). Plaintiff appealed the decision on February 16, 2022 (Id. ¶ 23). The appeal was denied on April 15, 2022 (Id. ¶ 28).

Plaintiff subsequently applied for Long Term Disability benefits under the Plan based on the same condition(s) (Id. ¶ 29). After initially denying the claim, the long-term disability administrator (who is not Sedgwick) approved the claim indicating that Plaintiff's date of disability was August 20, 2021 (Id. ¶ 32).

Plaintiff filed a Complaint on April 14, 2023, alleging that he was improperly denied STD benefits (Doc. 1).

**II.     Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255. "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently

to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." Progressive Cas. Ins. Co. v. Morton, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015) (citations omitted). There are no genuine issues of material fact that would preclude summary judgment in this matter.

ERISA Plan determinations are subject to two different standards of review, *de novo* and abuse of discretion, depending on the terms of the Plan. Mitchell v. Blue Cross Blue Shield of North Dakota, 953 F.3d 529, 537 (8th Cir. 2020). If "an ERISA plan grants the plan administrator discretionary authority to interpret plan provisions and determine claimant eligibility, we review the administrator's decision for an abuse of discretion." Richmond v. Life Ins. Co. of North America, 51 F.4th 802, 805 (8th Cir. 2022). It is undisputed that the Plan at issue in this case grants discretionary authority to the Claims Administrator and that the abuse of discretion standard applies to this case (Doc. 48, pp. 5-6).

Under this standard, a Plan decision should be reversed only if "it was arbitrary and capricious, meaning it was unreasonable or unsupported by substantial evidence." McIntyre v. Reliance Standard Life Ins. Co., 73 F.4th 993, 1000 (8th Cir. 2023). Thus, a decision must be upheld if a reasonable person could reach the same decision based on the evidence even if this Court would reach a contrary decision. Id. A decision will be upheld if substantial evidence, more than a scintilla but less than a preponderance, supports the decision. Roehr v. Sun Life Assurance Co. of Canada, 21 F.4th 519, 525 (8th Cir. 2021). And, "only when the evidence relied on is overwhelmed by contrary evidence may the court find an abuse of discretion." McIntyre, 21 F.4th at 1000 (quotation marks and citation omitted).

Plaintiff argues that the Claims Administrator failed to consider his frequent, urgent, and unpredictable need to use the bathroom in denying benefits. He asserts that his condition prevents

Page 3 of 12

him from fulfilling the key requirements of his job and that the Claims Administrator did not analyze or ignored the impact of his condition on his ability to work.  He further argues that the Claims Administrator failed to consider his condition in the appeals process and failed to provide a full and fair review of Plaintiff's claims.  In response, Defendants contend that Plaintiff had the burden to substantiate his claim with objective medical evidence but failed to do so.

**III.    Claims Administrator's Decision and Medical Evidence**

The Claims Administrator's final decision is dated April 15, 2022 (Doc. 42-1, pp. 35-37). In deciding Plaintiff's claim, the Claims Administrator considered a list of medical reports that include:

> 1. Records from Dr. Rajesh Desai dated January 18, 2021 (laboratory report), March 3, 2021 (laboratory report), and March 15, 2021 (office visit note);
>
> 2.  Records from Dr. David H. Todd dated February 24, 2021 (progress note), March 19, 2021, April 23, 2021 (progress note), June 24, 2021 (attending physician statement and progress note), June 25, 2021 (laboratory report), July 16, 2021 (progress note), September 1, 2021 (laboratory report), and January 12, 2022 (patient summary and laboratory report);
>
> 3.  Records from Dr. Mark Dillon dated June 4, 2021 (office visit note), June 22, 2021 (attending physician statement).

The Claims Administrator also considered the reports of Dr. Darius Schneider and Dr. Bernard Heckman, who provided an independent review of the medical records.  The Claims Administrator concluded that:

> The available records do not contain sufficient medical data, observational data, lab tests reported to substantiate a functional impairment and/or ongoing illness.
>
> It was concluded after reviewing all the medical documentation contained in the file that the medical does not support an inability to perform your own job from June 14, 2021 to your return to work date.  The medical records are lacking any records that address any clinical observations or any exam findings.

***

> As the medical information in the file does not support your inability to perform your job, as defined by the Plan quoted above, we are confirming the denial of benefits from June 14, through Return to Work Date.

(Id. 36). Thus, the Claims Administrator found that there were no objective medical findings that supported Plaintiff's claim of total disability as defined by the Plan during the relevant time period.

The medical evidence considered included, in part, two statements from Plaintiff's treating physicians and two opinions from doctors who reviewed the medical records.

In a June 24, 2021 "Disability and Leave Healthcare Provider Statement," which is identified as an "attending physician statement" above, Dr. Todd[1] provides information on Plaintiff's condition (Doc. 46-1, pp. 74-76). Dr. Todd indicates that Plaintiff will be incapacitated from June 14, 2021 to June 14, 2022 and that he could not perform any of his job functions because of diarrhea, constipation, abdominal pain, cramping, flatulence, and exhaustion. Dr. Todd notes a diagnosis of irritable bowel syndrome (IBS) with constipation, a history of hemorrhoidectomy with comorbidities of hypertension and colon polyps. The treatment plan includes "stress reduction, rest, 1 year off work for lifestyle change." Dr. Todd notes that Plaintiff was referred to Dr. Dillon. While partially unreadable, Dr. Todd indicates that Plaintiff has trouble with at least toileting, hygiene, and sleeping. On July 1, 2021, Dr. Todd reaffirmed that he was "certifying [Plaintiff] off work for one year" starting on June 14, 2021 (Doc. 53, ¶ 10; Doc. 44-1, p. 38).

Dr. Dillon, a gastroenterologist, also provided a "Disability and Leave Healthcare Provider Statement[2] (Doc. 46-1, pp. 78-80). In this statement, Dr. Dillon indicates that "there is no reason he should not have been working from GI standpoint." He clarifies that he had not treated Plaintiff

---

[1] It is unclear what specialty Dr. Todd practices, but the Court assumes he is an internist.

[2] This report is dated October 22, 2021 but appears to have been faxed to the Claims Administrator on June 22, 2021. Both parties appear to agree that June 22 is the actual date of the report.

since March, 2021 and at that point there were "no reason or symptoms for FMLA – strictly from GI standpoint."  In Dr. Dillon's last treatment note from March 4, 2021, he notes Plaintiff's IBS diagnosis (Doc. 53, ¶ 4; Doc. 46-1, p. 82).  Dr. Dillon also indicates Plaintiff's subjective statements of his condition; that he spent 4-5 hours on the toilet to eliminate stool on some days; that he has moderate abdominal discomfort and bloating; and, that he wakes at night to use the bathroom.  Upon examination, Dr. Dillon found that Plaintiff was in no apparent distress and that he had "normal active bowel sounds; no masses palpated; nontender; no guarding; no rebound tenderness; no organomegaly; no ascites" upon a gastrointestinal examination.  Dr. Dillon believed Plaintiff had symptoms consistent with IBS and prescribed medication (Lactulose); Dr. Dillon also believed that Plaintiff's other medication, Amlodipine (a calcium channel blocker), may be causing his constipation.

After Plaintiff's claim was initially denied, Plaintiff submitted a declaration to the Claims Administrator on February16, 2022 in support of his appeal (Doc. 52 ¶ 21).  In the declaration, he states that his medical condition significantly affected his ability to perform job functions.  In particular, he would need to use the bathroom frequently and unpredictably 7-10 times a day for 10 to 15 minutes each time; he would sometimes soil himself and need to go home to change clothes; he would be late to work because he needed to use the bathroom; he avoided eating prior to traveling for work and would still need to use the restroom frequently; and, he would excuse himself from meetings for 10 minutes to an hour to use the restroom.

Dr. Heckman (a gastroenterologist) reviewed Plaintiff's medical records and Plaintiff's February 16, 2022 declaration in forming his opinion (Doc. 43-1, p. 62).  He opined that: he "agreed with the claimant's providers that there is no clinical medical evidence of impairment"; that during the relevant time period there is  "no clinical medical evidence to support impairment";

Page 6 of 12

and, "from the perspective of gastroenterology, functional impairment is not supported from 06/14/21 to the RTW date." (Doc. 53, ¶ 37; Doc. 43-1, p. 65). Thus, Dr. Heckman found that Plaintiff's medical conditions did not affect his ability to perform his job and that there are no reported side effects from medication (Doc. 53 ¶ 38).[3]

Dr. Schneider (endocrinologist) likewise reviewed Plaintiff's medical records and his declaration. Dr. Schneider opined that Plaintiff had no functional impairments related to his medical conditions (Doc. 43-1, pp. 32-39). In making his opinion, Dr. Schneider noted that "[t]he available medical records do not contain sufficient medical data, observational data, lab tests . . . substantiat[ing] functional impairments and/or ongoing illness from the perspective of my specialties, internal medicine, and Endocrinology" (Doc. 43-1, p. 37).

It is undisputed that the initial adjudicator of Plaintiff's claim for long-term disability denied Plaintiff's claim based on the same medical evidence submitted to the Claims Administrator (Doc. 61, ¶ 30).[4] It is likewise undisputed that when Plaintiff appealed the decision on his long-term disability claim, he supplied medical records from a new medical provider, records that he did not provide to the Claims Administrator prior to the final decision on STD benefits (Doc. 61 ¶¶ 31-32).

---

[3] As Plaintiff points out, Dr. Dillon's March 4, 2021 notes, which Dr. Heckman reviewed, indicate that Plaintiff believed a prescription of Linzess caused diarrhea, that other medication upset his stomach, and that other medication may cause constipation (Doc. 53, ¶ 39).

[4] Plaintiff states "DISPUTED" beneath this statement of fact but does not cite to the record or any other evidence in support. Local Rule 4.01(E) requires responses to statements of uncontroverted fact be supported by specific citation to the record. Failure to do so means that this fact, along with other similar undisputed facts, is deemed admitted.

## IV.     Discussion

It is undisputed that to qualify for STD benefits, Plaintiff must be "totally disabled" as defined by the Plan:

> ***Totally Disabled***
> You are considered totally disabled during the Elimination Period if you cannot perform the Essential Duties of your own occupation due to a Non-Occupational Illness or a Non-Occupational Injury.

(Doc. 42-1, pp. 12; Doc. 61, ¶ 4).  The "Elimination Period" is essentially the first week of total disability where an employee is expected to use paid time off (Doc. 42-1, pp. 5, 9).  The "Essential Duties" of a job are defined as: "the important tasks, functions and operations generally required by employers from those engaged in their usual occupation that cannot be reasonably omitted or modified"  (Doc. 42-1, p. 30).  It is undisputed that Plaintiff's "major duties" include collaborating with others, preparing written material, managing others, and attending industry functions.  His duties require: "Reaching, Reading, Sitting, Speaking, Standing, Walking, Typing, Climbing Stairs, Usings Hands Repetitively, Hearing, Problem Solving, Decision Making, Interpreting Data, Organizing, Writing Process, Planning, [and] Concentration/Focus" (Doc. 61, ¶¶ 7, 8).  Plaintiff also is required to work in an office environment and travel up to 50% of the time for day trips and occasional overnight trips (Doc. 61, ¶ 9).

A finding of total disability must be supported by objective medical records and cannot be solely supported by subjective statements.  Thus,

> A claim of Total Disability or Partial Disability cannot be based solely on Self-Reported Symptoms. Total Disability and Partial Disability must be based at least in part on objective evidence, which means the following:
>
> - Diagnosis determination by the Health Care Provider by use of tests, imaging, clinical studies, medical procedures and other physical evidence;
> - Intensity and frequency of treatment, including your physical response and any symptoms associated with treatment; and
> - Presence of other health conditions, injuries and illness.

> You must be under the Regular Care of a Health Care Provider throughout your disability for Short-Term Disability benefits to be payable. The Claims Administrator may have you examined at its expense from time to time and may request that you provide other satisfactory proof of your continued disability.

(Doc. 42-1, pp. 12-13).

The parties agree that Plaintiff was diagnosed with IBS with constipation and diarrhea prior to and while seeking STD benefits (Doc. 61, ¶ 18).  It is also undisputed that none of Plaintiff's treating doctors identified any "tests, imaging, clinical studies, medical procedures and other physical evidence" that would support the symptoms Plaintiff indicates he experienced to the degree that he alleges in his declaration or otherwise.  Indeed, the *only* evidence that Plaintiff provided is his "Self-Reported Symptoms," which, standing alone, cannot support an STD claim per the Plan.  While Plaintiff points out that the medical records set forth his diagnosis (which is undisputed), he only offers red herrings and irrelevant information to support his argument that he is entitled to benefits.  Indeed, in his own statement of material facts, he cites to no objective medical records that would support a finding that he is entitled to STD benefits.  Accordingly, this Court can only find that the Claims Administrator's decision is supported by substantial evidence (or the lack thereof in this case) and that there is no overwhelming contrary evidence that would undermine the reasonableness of the decision.

Nonetheless, Plaintiff argues that the Claims Administrator failed to provide a full and fair review as required by ERISA § 503, which provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall--
> **(1)** provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

Page **9** of **12**

> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.  Plaintiff argues that the final decision did not cite Plaintiff's declaration and appeal and therefore did not consider that information in rendering the decision.  In a related argument, Plaintiff states that the decision did not provide a detailed recitation of the medical records or other information provided by Plaintiff or offer a nuanced analysis of, for example, the timing of Plaintiff's treatments and the opinion of Dr. Todd.  Finally, Plaintiff argues that the decision ignored the one piece of evidence, Plaintiff's declaration, that was the only and best evidence of functional limitations caused by the symptoms of Plaintiff's medical condition.   The Court is not persuaded.

Certainly, "though we afford a plan administrator's decision great deference, an administrator cannot simply ignore relevant evidence or arbitrarily refuse to credit a claimant's reliable evidence."  Waldoch v. Medtronic, Inc., 757 F.3d 822, 833 (8th Cir. 2014) (quotation marks and citations omitted).  However, the bases of the Claims Administrator's decision is the lack of objective medical evidence supporting Plaintiff's claim of functional limitations.  See Coker v Metropolitan Life Ins. Co., 281 F.3d 793, 798-799 (8th Cir. 2022) (noting that while the parties agreed that the plaintiff suffered from a medical condition, there was no objective medical evidence supporting the functional limitations claimed).  As such, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of [reliable] objective evidence [of testing or other proof to support the finding of a long-term disability]." McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924-925 (8th Cir. 2004).  It is undisputed that the objective medical evidence reasonably supported a finding that Plaintiff was not entitled to STD benefits.  It is likewise undisputed that the Claims Administrator relied on the opinions of Drs. Heckman and

Schneider, opinions which in turn considered the records of Plaintiff's treating doctors, *and his declaration*. Finally, there is no suggestion in Plaintiff's briefs that the Plan requirements are inconsistent with ERISA.

It is undisputed that in February, 2021, Plaintiff did not report any abdominal pain, constipation, or diarrhea (Doc. 61, ¶ 11). In March, 2021, Plaintiff reported spending 4-5 hours on the toilet, but a clinical examination was normal, and Dr. Dillon was not prompted by that examination to later find that Plaintiff was totally disabled (Id. ¶ 12). In that month, while Plaintiff reported alternating between constipation and diarrhea, an examination (by Dr. Desai) was negative for both with no gastrointestinal pain and a normal abdomen examination (Id. ¶14; Doc. 42-1, p. 45). In April, 2021, Plaintiff stated he "feel[s] great" and that there was an improvement in his constipation – his physical examination was normal and there is no indication of anything more than conservative treatment (Doc. 61, ¶ 16; Doc. 42-1, pp. 60-61). On the day Dr. Todd provided his attending physician statement, while Plaintiff reported frequent diarrhea/constipation, the physical examination was normal (Doc. 61, ¶ 18). In a subsequent appointment to review laboratory results in July, 2021, Dr. Todd's physical examination likewise was normal and resulted in conservative treatment (Doc. 42-1, p. 51). There are no other relevant medical records. As such, the medical records reveal that Plaintiff reported bouts of diarrhea and constipation; however, there were no clinical signs or findings supporting the severity of these symptoms that he advocated before the Claims Administrator. See e.g. Nauss v. Sedgwick Claims Mgmt Serv., Inc., 2021 WL 5195797 (E.D. Mo. 2021).

Plaintiff also offers a variety of other arguments that the Court should disregard or find not-credible evidence supporting the Claims Administrator's decision. For example, he questions whether Drs. Heckman and Schneider actually attempted to contact his treating providers and

Page **11** of **12**

whether Dr. Dillons' statement should be considered because it was offered 3 months prior to his actual alleged onset date. These arguments go to the weight of the evidence, which this Court does not reweigh. Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1053 (8th Cir. 2011). And, Plaintiff cites to no other evidence or convincing case authority to support his remaining arguments. In sum, Plaintiff provides no actual objective medical evidence to contradict Dr. Dillon's finding of no work restrictions or to undermine the opinions of the medical experts that the Claims Administrator reasonably relied on in denying benefits.

### VI. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. 48) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. 50) is **GRANTED**. The Court finds that Defendants' decision to deny STD benefits is not arbitrary or capricious, unreasonable, or unsupported by substantial evidence.

The Clerk of Court shall enter judgment accordingly.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of August, 2024